## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

ROBERT R. POREMSKI,

      Petitioner,

v.                                   Case No. 8:05-cv-1177-T-27TBM

WALTER A. MCNEIL[1],

      Respondent.

_____/

### ORDER

      Petitioner, a State of Florida inmate proceeding *pro se*, petitions for the writ of habeas corpus pursuant to 28 U.S.C. § 2254 and challenges the validity of his conviction for attempted first-degree murder (Dkt. #1).   The Respondent argues that Petitioner's claims fail to state a federal constitutional claim or fail to meet the threshold requirements of 28 U.S.C. § 2254(d) and (e).

      Petitioner entered a *nolo contendere* plea and was sentenced to twenty years' imprisonment.[2] The state court denied Petitioner's subsequent state Rule 3.850 motion and the state appellate court affirmed the denial.  Petitioner's  Section 2254 petition followed.

### STANDARD OF REVIEW

      Because this action commenced after April 24, 1996, Section 2254(d), as amended by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), governs this proceeding.

---

[1]  Walter A. McNeil, Secretary of the Florida Department of Corrections, is substituted as the party respondent. Fed. R. Civ. P. 25(d).

[2]  Petitioner voluntarily withdrew his appeal of the judgment and sentence (Dkt. #8, Ex. 3).

*Wilcox v. Florida Dep't of Corr.*, 158 F.3d 1209, 1210 (11th Cir. 1998), *cert. denied*, 531 U.S. 840

(2000). Section 2254(d), which creates a highly deferential standard for federal court review of state

court adjudications, states in pertinent part:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant
> to the judgment of a State court shall not be granted with respect to any claim that
> was adjudicated on the merits in State court proceedings unless the adjudication of
> the claim–
>
>> (1) resulted in a decision that was contrary to, or involved an
>> unreasonable application of, clearly established Federal law, as
>> determined by the Supreme Court of the United States; or
>>
>> (2) resulted in a decision that was based on an unreasonable
>> determination of the facts in light of the evidence presented in the
>> State court proceeding.

In *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000), the Supreme Court interpreted this

deferential standard:

> In sum, § 2254(d)(1) places a new constraint on the power of a federal habeas court
> to grant a state prisoner's application for a writ of habeas corpus with respect to
> claims adjudicated on the merits in state court. Under § 2254(d)(1), the writ may
> issue only if one of the following two conditions is satisfied--the state-court
> adjudication resulted in a decision that (1) "was contrary to . . . clearly established
> Federal Law, as determined by the Supreme Court of the United States," or (2)
> "involved an unreasonable application of . . . clearly established Federal law, as
> determined by the Supreme Court of the United States." Under the "contrary to"
> clause, a federal habeas court may grant the writ if the state court arrives at a
> conclusion opposite to that reached by this Court on a question of law or if the state
> court decides a case differently than this Court has on a set of materially
> indistinguishable facts. Under the "unreasonable application" clause, a federal
> habeas court may grant the writ if the state court identifies the correct governing
> legal principle from this Court's decisions but unreasonably applies that principle to
> the facts of the prisoner's case.

"The focus . . . is on whether the state court's application of clearly established federal law

is objectively unreasonable, . . . an unreasonable application is different from an incorrect one." *Bell*

*v. Cone*, 535 U.S. 685, 694 (2002). *Accord Brown v. Head*, 272 F.3d 1308, 1313 (11th Cir. 2001)

("It is the objective reasonableness, not the correctness *per se*, of the state court decision that we are to decide.").

Petitioner has the burden of overcoming a state court factual determination by clear and convincing evidence. "[A] determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1). This presumption of correctness applies only to findings of fact, not mixed determinations of law and fact. *Parker v. Head*, 244 F.3d 831, 836 (11th Cir.), *cert. denied*, 534 U.S. 1046 (2001). Petitioner's petition is subject to the provisions of the AEDPA because his conviction was entered after the AEDPA was enacted. Consequently, a presumption of correctness attaches to the finding of fact in the trial court's rejection of Petitioner's claims.

## Ground One

Petitioner contends that his *nolo contendere* plea was unlawfully induced or involuntarily entered because the Information fails to provide sufficient notice "of the true nature and cause of any offense."[3] Petitioner alleges that the charging document is defective because it fails to delineate the essential elements of the charged offense in a single count, fails to set forth the elements of "a not necessarily include[d] lesser offense," is unconstitutionally vague, prevented Petitioner from preparing a defense or entering a knowing and voluntary plea, and violates state procedural rules

---

[3] Petitioner relies upon the arguments and authorities cited in his state Rule 3.850 motion to support his federal habeas claims.

(Dkt. #8, Ex. 4, pp. 7-9).[4] The state court rejected this claim in Petitioner's state Rule 3.850 motion as follows:

> The Defendant alleges that the information filed against him is so defective as to warrant setting aside his conviction and sentence. The reason argued by the Defendant is that the statutory language fails to provide him with sufficient notice of "the nature and cause of the charge." The Defendant's argument on this claim alone is ten pages long. However, the court finds the argument unpersuasive. The Defendant was charged with attempted murder in the first degree, based on the allegation that the Defendant's actions were premeditated. His actions, as described in the information, were attempting to kill his wife, Regina Poremski, by torturing and/or kicking and/or striking and/or burning her. The Defendant's argument that the use of "and/or" serve to confuse him as to exactly what act or acts the state alleged him to have committed is disingenuous as well as unpersuasive. The Defendant was charged with attempting to murder his wife by, essentially, beating her. Additional relevant facts are included in the arrest affidavit filed in this case. This claim is denied.

(Dkt. #8, Ex. 4, p. 37) (court's record citations omitted).[5]

"It is a basic tenet of constitutional law that due process is violated when an individual is convicted of a crime not charged in the charging instrument." *Perley v. State*, 947 So.2d 672, 674 (Fla. 4th DCA 2007) (*quoting Castillo v. State*, 929 So.2d 1180, 1181 (Fla. 4th DCA 2006)). The Sixth Amendment's notice guarantee, through the Fourteenth Amendment's due process clause, applies to state prosecutions. *Rogers v. State*, 963 So.2d 328, 332 (Fla. 2d DCA 2007). An information "shall be a plain, concise, and definite written statement of the essential facts constituting the offense charged." Fla. R. Crim. P. 3.140(b). "An information must allege each of the essential elements of a crime to be valid." *State v. Dye*, 346 So.2d 538, 541 (Fla. 1977). "A criminal information is fundamentally defective 'only where it totally omits an essential element of

---

[4] The page numbers cited in Respondent's Exhibit 4 are the handwritten numbers located at the bottom of each page.

[5] The state appellate court affirmed the denial of this claim in a *per curiam* decision without written opinion (Dkt. #8, Ex. 5).

the crime or is so vague, indistinct or indefinite that the defendant is misled or exposed to double jeopardy.'" *Perley v. State*, 947 So.2d at 674 (*citing Felton v. State*, 919 So.2d 557, 559 (Fla. 5th DCA 2005) (*quoting Smartmays v. State*, 901 So.2d 278 (Fla. 5th DCA 2005)). *See also* Fla. R. Crim. P. 3.140(o).

Sections 782.04(1) and 777.04, Florida Statutes, establish the offense of attempted first-degree murder, the charge for which Petitioner stands convicted. Specifically, § 782.04(1) defines murder in relevant part as:

> The unlawful killing of a human being:
>
> 1. When perpetrated by a premeditated design to effect the death of the person killed or any human being.

Fla. Stat. § 782.04(1)(a)(1). Florida law defines attempt in relevant part as:

> (1) A person who attempts to commit an offense prohibited by law and in such attempt does any act toward the commission of such offense, but fails in the perpetration or is intercepted or prevented in the execution thereof, commits the offense of criminal attempt . . . .

Fla. Stat. § 777.04(1).

In Petitioner's case, the Information charged that Petitioner:

> [U]nlawfully and from a premeditated design to effect the death of Regina Ruth Poremski, a human being, did attempt to kill her by torturing and/or kicking and/or striking and/or burning, thereby knowingly and intentionally causing great bodily harm or permanent disability or permanent disfigurement to her person; contrary to Chapter 782.04(1)/777.04, Florida Statutes . . . .

(Dkt. #8, Ex. 1, p. 6).[6]  The Information was not so vague, indistinct or indefinite as to mislead

Petitioner or impede the preparation of his defense.  *See Perley v. State*, 947 So.2d at 674.

Furthermore, Petitioner fails to cite any defect rendering the Information so deficient as to deprive

him of a federal constitutional right.  Petitioner fails to meet his burden of proving that the state

court unreasonably applied controlling Supreme Court precedent or unreasonably determined the

facts.  *See* 28 U.S.C. § 2254(d)(1), (2).  Ground One warrants no federal habeas corpus relief.[7]

**Ground Two**

Petitioner contends that his plea was involuntary because the trial court failed to ensure that

he understood the nature of the charge and the options available to him as evidenced by the plea

colloquy.  The state court rejected this claim in Petitioner's state Rule 3.850 motion as follows:

> The Defendant alleges that his plea was involuntary because the court failed to
> ensure that he understood the nature of the charge and the options available to him

---

[6] Petitioner alleges that the use of the terms "and/or" in the Information "hedges the causation element in so many different ways that no one can tell in what manner the defendant is accused of committing a crime or, in fact, of anything other than the vaguest possible suggestions of a criminal act" (Dkt. #1, Attach. 2, p. 12).  To the extent Petitioner challenges the conjunctive terms describing the acts constituting the charged offense, his claim warrants no relief.

> [It is] a regular practice for prosecutors to charge conjunctively, in one count, the various means of committing a statutory offense, in order to avoid the pitfalls of duplicitous pleading.

> "A statute often makes punishable the doing of one thing *or* another, . . . sometimes thus specifying a considerable number of things.  Then, by proper and ordinary construction, a person who in one transaction does all, violates the statute but once, and incurs only one penalty.  Yet he violates it equally by doing one of the things.  Therefore the indictment on such a statute may allege, in a single count, that the defendant did as many of the forbidden things as the pleader chooses, employing the conjunction *and* where the statute has 'or,' and it will not be double, and it will be established at the trial by proof of any one of them."

*Griffin v. United States*, 502 U.S. 46, 51 (1991) (citations omitted) (emphasis in original).

[7] To the extent that Petitioner challenges the sufficiency of the Information, his claim warrants no relief.  The legally sufficiency of the Information is a matter of state law.  A state's interpretation of its own laws or rules provides no basis for federal habeas corpus relief because no federal constitutional question is presented.  28 U.S.C. § 2254(a); *Estelle v. McGuire*, 502 U.S. 62, 67 (1991) ("[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions.").

before accepting his plea. The court finds that this claim lacks merit. Lengthy discussions were held in this case before the Defendant opted to enter a plea, minimizing his risk of a thirty-year sentence in the event he was found guilty at trial. The court discussed both issues with the Defendant and trial counsel on July 17, 2002 and July 24, 2002. The case was passed for one week after the court offered the 20-year sentence the Defendant ultimately accepted in order that he could consider it after conferring with his attorney. At both hearings, the court and counsel explained that the lowest sentence the Defendant could receive was 7.1 years in the Department of Corrections and the highest was 30 years. A lengthy explanation was given of the court's reasoning in making an offer on this kind of case.

The Defendant includes in this claim that the court did not discuss possible defenses or lesser-included offenses. As an initial matter, the court is not aware of any requirement that the trial judge discuss defenses or lesser-included offenses with a defendant, but also notes that the transcripts included in the record in this matter reveal that discussion was undertaken of the possible lesser-included offense of aggravated battery. The risk inherent in going to trial seeking a lesser-included offense was also discussed. This claim is denied.

(Dkt. #8, Ex. 4, p. 37) (court's record citations omitted).[8]

At the change of plea hearing, the colloquy proceeded as follows:

Court:          Could you raise your right hand sir.

(Thereupon, the Defendant is sworn by the Court.)

Defendant:      Yes.

Court:          You are Robert Poremski?

Defendant:      Yes.

Court:          How old are you?

Defendant:      45.

Court:          How far in school have you gone?

Defendant:      12th, GED.

---

[8] The state appellate court affirmed the denial of this claim in a *per curiam* decision without written opinion (Dkt. #8, Ex. 5).

| | |
|---|---|
| Court: | You have a GED? |
| Defendant: | Yes. |
| Court: | You can read and write? |
| Defendant: | Yes. |
| Court: | Have you gone over the plea form with [defense counsel]? |
| Defendant: | Yes, sir. |
| Court: | Do you understand that form contains all of your constitutional rights? |
| Defendant: | Yes, sir. |
| Court: | Do you understand that you are giving up all of those rights in entering this plea here today? |
| Defendant: | Yes, sir. |
| Court: | Is anyone threatening or forcing you to do that? |
| Defendant: | No, but I thought that I was going to get an aggravated plea that carries the same thing as the attempted.  I just though - - |
| Counsel: | He hoped for that, but he we [sic] had not had any discussions. |
| Court: | An aggravated battery would be a lesser included offense. |
| Defendant: | I thought it was the same thing, I'm sorry. |
| Court: | The aggravated battery is only punishable by up to 15 years, the attempted murder would be |

|  |  |
|---|---|
|  | punishable by 30. The only way you can plea to a sentence of 20 is if it is an attempted murder charge. Do you understand that? |
| Defendant: | Yes, sir. |
| Counsel: | Just to clear something up, I think what happened was we were discussing the last time that if he were to go to trial and the jury were to come back with a lesser of aggravated battery, then the maximum would be 15, but Your Honor, nor did I, nor did the State ever approach Mr. Poremski him [sic] with an offer that the case would be amended to an aggravated battery. |
| Court: | The charge is attempted murder in the first degree, it is punishable, as we discussed, up to 30 years in prison, do you understand that? |
| Defendant: | Yes. |
| Court: | The plea that you are pleading to is 20 years to the charge that the State has filed, do you understand that? |
| Defendant: | Yes. |
| Court: | Is anyone threatening you or forcing you to get you to enter this plea? |
| Defendant: | No. |
| Court: | Are you presently under the influence of alcohol or narcotics? |
| Defendant: | Yes. |
| Court: | What are you taking? |

Defendant:    I don't remember the name of it, I forget. I take it along with my other medication.

Court:    You are being treated for a mental illness, is that right?

Defendant:    Yes, sir.

Court:    What was the diagnosis?

Counsel:    You have that in your - -

Court:    I know, I'm just doing the colloquy.

Defendant:    Manic depressant [sic] and antisocial.

Court:    Antisocial personality?

Defendant:    Yes.

Court:    You are taking different medications for that, right?

Defendant:    I'm taking 18 pills a day and two boosters.

Court:    Does that medication help you on a daily basis understand what is going on?

Defendant:    It helps me to be functional, yes, sir.

Court:    Today are you clear headed and do you understand what you are doing?

Defendant:    Yes, as clear headed as I'm going to get, yes, sir.

Court:    Do you feel that you understand the decision that you are making and you are able to go forward and make the best decision for yourself today?

Defendant:    Yes, sir.

Court:        Have you had enough time to talk to
              [defense counsel] about these cases?

Defendant:    Yes, sir.

Court:        Are you satisfied with the legal
              representation that she has provided to
              you?

Defendant:    Yes, sir.

Court:        Do you understand as we have
              discussed that this charge carries a
              maximum of up to 30 years in prison?

Defendant:    Yes.

Court:        And your sentence is going to be 20
              and you received credit for the time
              that you have already served, do you
              understand that?

Defendant:    Yes.

Court:        Has anyone promised you how much
              good and gain time that you are going
              to earn in Department of Corrections
              or when you are going to be released?

Defendant:    No.

Court:        Do you have any questions at all about
              what is occurring here today?

Defendant:    No.

Court:        The Court will find that there is a
              sufficient factual basis which we

addressed at length last week[9] as part of our discussions for the plea. I'll accept the plea, finding it is entered freely and voluntarily upon the advice of competent counsel who he indicates his satisfaction [sic]. I'll adjudicate him guilty, sentence him to 20 years in the Department of Corrections. He will receive credit for the time he has served. The financials will be as a lien. You have 30 days to appeal. Good luck to you, sir.

(Dkt. #8, Ex. 1, pp. 62-67).

A voluntary and intelligent guilty plea forecloses federal collateral review of alleged constitutional errors preceding the entry of the plea.[10] *Tollett v. Henderson*, 411 U.S. 258, 266-67 (1973); *Wilson v. United States*, 962 F.2d 996 (11th Cir. 1992). However, the plea does not foreclose claims that bear upon the voluntariness of the plea. *United States v. Broce*, 488 U.S. 563 (1989) ("when the judgment of conviction upon a guilty plea has become final and the offender seeks to reopen the proceeding, the inquiry is ordinarily confined to whether the underlying plea was both counseled and voluntary"); *Stano v. Dugger*, 921 F.2d 1125, 1150-51 (11th Cir. 1991) ("The Court allows only challenges to the voluntary and intelligent entry of the plea if a convicted defendant can prove "serious derelictions in his counsel's advice regarding the plea.") (citation omitted). "[T]he representations of the defendant . . . [at a plea proceeding] as well as any findings made by the judge accepting plea, constitute a formidable barrier in any subsequent collateral

---

[9] At a pretrial hearing on July 17, 2002, defense counsel advised the court of the underlying facts supporting the charged offense and the victim testified about her injuries (Dkt. #8, Ex. 4, pp. 49-56).

[10] Because a plea of *nolo contendere* is treated as an admission of guilt, *Hudson v. United States*, 272 U.S. 451 (1926); *North Carolina v. Alford*, 400 U.S. 25, 35-36 (1970), "the law applicable to a guilty plea is also applicable to a plea of *nolo contendere*." *Carter v. Collins*, 918 F.2d 1198, 1200 n. 1 (5th Cir. 1990) (citations omitted).

proceedings. Solemn declarations in open court carry a strong presumption of verity." *Blackledge v. Allison*, 431 U.S. 63, 73-74 (1977).

Petitioner presents no evidence to rebut the adequacy of the plea colloquy or to refute the state court's factual finding that he understood the consequences of his plea. Petitioner fails to identify a decision of the United States Supreme Court holding that due process requires a state court to advise a defendant of the possible defenses and lesser-included offenses associated with the charged offense before accepting a *nolo contendere* plea. *See Mask v. McGinnis*, 252 F.3d 85, 89-90 (2d Cir. 2001) ("petitioner is entitled to habeas relief only upon a showing that the state courts unreasonably applied clearly established *Supreme Court* precedent") (emphasis in original).

A reviewing federal court may set aside a state court guilty plea only for failure to satisfy due process. A knowing and voluntary plea satisfies due process. *Boykin v. Alabama*, 395 U.S. 238, 242-43 (1969).[11] "If a defendant understands the charges against him, understands the consequences of a guilty plea, and voluntarily chooses to plead guilty, without being coerced to do so, the guilty plea . . . will be upheld on federal review." *Stano v. Dugger*, 921 F.2d at 1141. A voluntary plea requires that a defendant understand the direct consequences of the plea. *Brady v. United States*, 397 U.S. 742, 755 (1970). A direct consequence is one that has a definite, immediate and largely automatic effect on the range of a defendant's punishment. *Steele v. Murphy*, 365 F.3d 14, 17 (1st Cir. 2004); *Wilson v. McGinnis*, 413 F.3d 196, 199 (2d Cir. 2005); *Warren v. Richland County Circuit Court*, 223 F.3d 454, 457 (7th Cir. 2000). Florida law applies this same standard. *Major v. State*, 814 So.2d 424, 429 (Fla. 2002) (approving definition of "direct consequence" as a

---

[11] Although the state trial court failed to cite *Boykin* or any other Supreme Court precedent to support its denial of this claim, no explicit citation is required. A state court need not cite Supreme Court precedent (or even be aware of it) if the decision is consistent with the precedent. *Early v. Packer*, 537 U.S. 3, 8 (2002); *Parker v. Sec'y of Dep't of Corr.*, 331 F.3d 764, 775-76 (11th Cir. 2003).

consequence having "a definite, immediate and largely automatic effect on the range of the defendant's punishment").

Petitioner signed a written change of plea form in which he averred that he entered his plea of his own free will and that no one had pressured or forced him to enter the *nolo contendere* plea.[12] The trial court judge questioned Petitioner as to his understanding of the plea form and the implications of his plea. Specifically, the trial judge questioned Petitioner about his understanding of the change of plea form; the nature of the charged offense; his understanding that he was giving up his constitutional rights; the maximum sentence that could be imposed on the attempted murder charge and the lesser-included offense of aggravated battery; whether anyone had made any representations to him about any type of early release or credit for time served; whether he was satisfied with the legal services he had received; the extent of his education; his ability to read and write; and whether he was under the influence of any alcohol, drugs or medication. The state trial court found that Petitioner's plea was made freely, knowingly and voluntarily with the advice of competent counsel. (Dkt. #8, Ex. 1, pp. 62-67). Petitioner fails to present any evidence to demonstrate that he involuntarily entered his plea. Petitioner fails to meet his burden of proving that the state court's denial of this claim resulted in an unreasonable application of controlling Supreme Court precedent or an unreasonable determination of the facts. *See* 28 U.S.C. § 2254(d)(1), (2). Ground Two warrants no relief.

---

[12] In the change of plea form that Petitioner signed, he averred in part:

I am entering this plea because I believe it is in my best interest to do so, and it is what I wish to do of my own free will. No one has pressured me or forced me to enter this plea against my will. No one has promised me anything to entice me to change my plea to 'no contest' . . . ".

(Dkt. #8, Ex. 1, p. 36).

**Ground Three**

Petitioner contends that his plea was involuntary because the trial court failed to establish

a sufficient factual basis for the charged offense. The state court rejected this claim in Petitioner's

state Rule 3.850 motion as follows:

> The purpose of Florida Rule of Criminal Procedure 3.172(a), which requires that the
> trial court be satisfied that there is a sufficient factual basis for a plea, is to insure that
> the plea is accurate, i.e., that the defendant does not plead to the wrong offense.
> Williams v. State, 316 So.2d 267, 271-72 (Fla. 1975). If there is a lack of
> compliance with the rule, it does not follow that the plea must be vacated. Id. at 275.
> Rather, the burden is on the defendant to show prejudice or manifest injustice. Id.
> at 274. See also Fla. R. Crim. P. 3.172(i). A trial court may determine that a factual
> basis exists for a plea based on a probable cause affidavit. Mack v. State, 616 So.2d
> 109 (Fla. 4th DCA 1993). See also State v. Franklin, 669 So.2d 339, 340 (Fla. 4th
> DCA 1996). In this case, the affidavit supports the contention that a factual basis for
> the plea existed. Additionally, trial counsel's description of the events and the
> victim's testimony at the July 17 pretrial conference support that finding. See Grant
> v. State, 316 So.2d 282, 283 (Fla. 1975); Suarez v. State, 616 So.2d 1067, 1068-69
> (Fla. 3d DCA 1993); Gore v. State, 552 So.2d 1185, 1186 (Fla. 5th DCA 1989). In
> this case, there is no deficiency in the factual basis presented to the court that, upon
> review of the record, indicates that the Defendant mistakenly entered a plea to the
> wrong offense. This claim is denied.

(Dkt. #8, Ex. 4, p. 37)[13] (court's record citations omitted).[14]

"A factual basis is necessary for accepting a guilty plea by a trial court when a defendant

proclaims his innocence and yet pleads guilty." *Stano v. Dugger*, 921 F.2d at 1140 (*citing North*

*Carolina v. Alford*, 400 U.S. 24, 38, n. 10 (1970); *Wallace v. Turner*, 695 F.2d 545, 548 (11th Cir.

---

[13] The trial court attached to its order denying Petitioner's state Rule 3.850 motion relevant portions of the record supporting the denial of this claim (Dkt. #8, Ex. 4, pp. 47-80). *See Koenig v. State*, 597 So.2d 256, 258 (Fla. 1992) ("Prior to accepting a plea of no contest, the trial judge must receive in the record factual information to establish the offense to which the defendant has entered his plea."). *See also Young v. State*, 935 So.2d 1263 (Fla. 2d DCA 2006) (reversing and remanding denial of defendant's claim in a state Rule 3.850 motion that counsel rendered ineffective assistance for failing to challenge the absence of a factual basis for his plea because post-conviction court failed to attach the transcript of the plea colloquy to its order and nothing in the record indicated that the trial court determined a factual basis existed for defendant's plea).

[14] The state appellate court affirmed the denial of this claim in a *per curiam* decision without written opinion (Dkt. #8, Ex. 5).

1983)).  No recitation of the factual basis for Petitioner's plea occurred at the change of plea hearing.

However, Petitioner did not proclaim his innocence at the change of plea hearing.  Consequently,

no recitation of the factual basis for Petitioner's plea was necessary.  *Stano v. Dugger*, 921 F.2d at

1140.  Notwithstanding, the plea colloquy establishes that the trial court determined that an adequate

factual basis existed for Petitioner's plea.  The trial court relied upon the following exchange at the

July 17, 2002, pretrial hearing to support its finding:[15]

|  |  |
|---|---|
| Court: | All right.  We are here on State v. Robert Poremski, Case No. 01-17676, the charge of attempted murder in the first degree.  We have had a number of pretrials. |
| Counsel: | We have been attempting to work this case out, Your Honor.  The allegations are that Mr. Poremski pummeled his wife in such a fashion that she ended up in the hospital in a precarious situation.  It ended up that she went to the hospital with a temperature of 88 degrees.  She was hypothermic.  She had a broken lower jaw, a broken nose, she had burn marks on her, and she was bruised pretty much from head to toe.  I believe they found one bite mark as well - - what they thought was a bite mark. |
|  | In any event, she was in the hospital for about ten days.  I know she went in, I believe the 31st, which would have been Halloween, and I think she was released on the 10th of November.  In any event, she is in the courtroom today. |

---

[15] This pretrial hearing occurred one week before Petitioner entered his change of plea on July 24, 2002.

Mr. Poremski has never wanted to go to trial. What he wants Your Honor to do is to sentence him to a term of prison, but he's just hoping that it won't be, you know, for the rest of his life.

. . .

Court:      What's [Ms. Poremski's] position? Does she wish to address the Court?

State:      She does, sir.

Court:      All right. Good morning. How are you today?

Witness:    Nervous.

Court:      Okay. Would you tell us your name?

Witness:    My name is Regina Poremski.

Court:      There is nothing to be nervous about. I'm just going to have as informal as we can in a court setting a discussion about these issues in [sic] the best way to proceed. As much as we have done - - and you have been here this morning. I have called other people and tried to talk to them about it. So we are here to discuss a possible resolution and certainly the effect that this had on you. And what you feel would be best is something that we want to discuss and get your feelings on.

Witness:    Well, as far as how it has affected me, there is [sic] several things that I deal with now that I had never had to before. I have problems with my jaw. They have done two surgeries. It would never be right. It causes my

mouth to be crooked. My nose is flat. I mean, these are little things that I see everyday when I look in the mirror. I have scars in my bellybutton. It was used as an ashtray. I have cigarette burn scars all over me.

My family had to go through the doctors telling them that I was going to die, that my chances of coming out of this were not good. My daughter had to sign permission for them to put a peg in my head to relieve the pressure that he caused when he beat me.

When I woke up in the hospital, they were very surprised and they were very good to me. It's just - - it's just so hard.

This man wasn't a stranger who just beat me. This man was a man who just had 11 months before that had promised to love, honor, and cherish me, and married me; and then turned around and nearly killed me. I don't know that he just couldn't wait for it to happen or why or anything. He can't tell me. I don't know. I have no recollection of what happened that day.

But I certainly - - I found out since then that this was not the first time, that he had done this to someone. It wasn't the first time that he did it to me. And it scares me that he could do it to somebody else, and they may not be as lucky as I was to wake up.

(Dkt. #8, Ex. 4, pp. 49-56). At the conclusion of the plea colloquy, the trial court found that a sufficient factual basis existed for the plea based on the aforementioned facts recited by defense

counsel and the victim (Dkt. #8, Ex. 1, pp. 62-67).[16] Petitioner fails to present clear and convincing evidence to rebut the state court's factual findings. Given Petitioner's sworn testimony that he had discussed the plea form and its contents with counsel, that he understood the charge and sentence he faced as a result of his plea, that he had had enough time to discuss his case with counsel and was satisfied with counsel's representation, and that he understood what was happening at the plea hearing, the state court's failure to recite the factual basis for the plea at the plea hearing fails to render Petitioner's plea unknowing or invalid. Petitioner fails to meet his burden of proving that the state court unreasonably applied controlling Supreme Court precedent or unreasonably determined the facts. *See* 28 U.S.C. § 2254(d)(1), (2). Ground Three warrants no federal habeas corpus relief.

**Ground Four**

Petitioner contends that he was under the influence of psychotropic and narcotic medications that rendered him incompetent to enter a voluntary plea. Petitioner further alleges that the trial court failed to conduct a competency hearing.[17] The state court rejected this claim in Petitioner's state Rule 3.850 motion as follows:

---

[16] Rule 3.172(a), Florida Rules of Criminal Procedure, requires that the trial judge determine that a factual basis for a *nolo contendere* plea exists before accepting the plea. This rule provides no requirement that the trial judge recite the factual basis at the plea hearing. Failure to follow this procedure shall not render a plea void absent a showing of prejudice. Fla. R. Crim P. 3.172(j). Petitioner fails to demonstrate prejudice based on the trial court's failure to reiterate the factual basis gleaned at the July 17, 2002, pretrial hearing at his July 24, 2002, change of plea hearing. *See Young v. State*, 616 So.2d 1133, 1134 (Fla. 3d DCA 1993) (*citing Williams v. State*, 316 So.2d 267, 273-75 (Fla. 1975) (a trial court may look to any source in the record to establish a factual basis)).

[17] To the extent Petitioner's claim, liberally construed, challenges the trial court's application of state law and state procedural rules, the claim warrants no relief. Federal habeas relief for a person in custody pursuant to the judgment of a state court is available only on the ground that the custody violates the Constitution, laws, or treaties of the United States. 28 U.S.C. § 2254(a); *Jones v. Goodwin*, 982 F.2d 464, 471 (11th Cir. 1993); *Krasnow v. Navarro*, 909 F.2d 451, 452 (11th Cir. 1990). A state's interpretation of its own laws or rules provides no basis for federal habeas corpus relief because no federal constitutional question is presented. 28 U.S.C. § 2254(a); *Estelle v. McGuire*, 502 U.S. 62, 67 (1991) ("[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions."). Whether the trial court violated the state constitution or failed to follow state procedure is a matter of state law and is not cognizable on federal habeas corpus review.

In this lengthy claim, the Defendant alleges that his plea was involuntary because he was under the influence of various psychotropic and narcotic medications administered to him at the Pinellas County Jail. He specifically alleges that: the court failed to hold a competency hearing after learning that the Defendant was taking a "substantial number of medications" [FN1]; that the court failed to make additional inquiry after the Defendant responded to a question regarding his level of understanding that he was "as clear headed as he was going to get;" that he was drooling, slurring and unsteady on his feet during his plea; and finally that the court ignored questions about his competency before accepting the Defendant's plea. A lengthy discussion of medical care he received after his plea is included in the claim.

> [FN1] The motion does not identify any of the medications prescribed or taken by the Defendant.

The record in this case [FN2], which includes the psychiatric report completed by David B. Kazar, Ph.D. that is referenced by the Defendant, affirmatively refutes this claim. It is noted that the report was filed on July 17, 2002, the day of the Defendant's pretrial and a transcript of which is attached hereto . . . . It is this report that the court and defense counsel discussed at the July 17 pretrial hearing. It reveals that while the primary focus of the evaluation was to determine sanity at the time of the offense competency to proceed was also addressed. Dr. Kazar determined that the Defendant was competent to proceed, relying on the major factors contemplated by Rule 3.211. It is noteworthy, as well, that the evaluation includes reference to the Defendant's discussion of his charge being reduced to aggravated battery, a recurring theme in this case.

> [FN2] The report is under seal in the court file and was reviewed by the court during consideration of the Defendant's motion.

With regard to the Defendant's claims about his mental status and medication at the time of his plea, the court finds that the transcript of his change of plea and sentencing affirmatively refutes his claim. The transcript indicates that this is not a situation where a defendant answered all questions from the court with one-word answers. Instead, the Defendant raised his question about a possible aggravated battery again as well as discussing his medications and diagnosis. When asked if his medication assisted his understanding of the proceedings, the Defendant responded that, "It helps me to be functional, yes, sir." The exchange mentioned in the Defendant's motion, in which he indicated that he was "as clear headed" as he was going to get, followed. The Defendant alleges that no further inquiry occurred - which is not the case. The court then asked, "Do you feel that you understand the decision you are making and you are able to go forward and make the best decision for yourself today?" To that, the Defendant responded, "Yes, sir." This claim is denied. Bond v. State, 695 So.2d 778 (Fla. 1st DCA 1997).

(Dkt. #8, Ex. 4, pp. 38-39).

"Treatment with anti-psychotic drugs does not *per se* render a defendant incompetent to stand trial." *Sheley v. Singletary*, 955 F.2d at 1438 (*citing Price v. Wainwright*, 759 F.2d 1549, 1555 (11th Cir. 1985)). The clearly established federal law on a defendant's competency to stand trial[18] is set forth in *Drope v. Missouri*, 420 U.S. 162 (1975); *Pate v. Robinson*, 383 U.S. 375 (1966), and *Dusky v. United States*, 362 U.S. 402 (1960). *Dusky* provides that the standard for mental competency to stand trial is "whether [a defendant] has sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding - - and whether he has a rational as well as factual understanding of the proceedings against him." *Dusky v. United States*, 362 U.S. at 402.

> The burden on the petitioner seeking federal habeas relief on the grounds of incompetency is heavy. The standard is: "[c]ourts in habeas corpus proceedings should not consider claims of mental incompetence to stand trial where the facts are not sufficient to positively, unequivocally, and clearly generate a real, substantial, and legitimate doubt as to the mental capacity of the petitioner." *Reese v. Wainwright*, 600 F.2d 1085, 1091 (5th Cir. 1979) (*citing Bruce v. Estelle*, 483 F.2d 1031, 1043 (5th Cir. 1973), subsequent opinion, 536 F.2d 1051 (5th Cir. 1976)), *cert. denied*, 444 U.S. 983, 100 S.Ct. 487, 62 L.Ed.2d 410 (1979).[19]

*Sheley v. Singletary*, 955 F.2d 1434, 1438 (11th Cir. 1992).[20] Under *Drope* and *Pate*, if a defendant fails to request that the trial court conduct an inquiry into his competency to stand trial, a trial court

---

[18] The competency standard for pleading guilty is the same as the competency standard for standing trial. *Godinez v. Moran*, 509 U.S. 389 (1993); *Stinson v. Wainwright*, 710 F.2d 743, 745 (11th Cir. 1983); *Malinauskas v. United States*, 505 F.2d 649, 654 (5th Cir. 1974).

[19] Unless later superseded by Eleventh Circuit precedent, a Fifth Circuit decision issued before October 1, 1981, binds this court. *Bonner v. City of Prichard*, 661 F.2d 1206, 1207 (11th Cir. 1981) (*en banc*).

[20] In *Sheley*, the court rejected the petitioner's claim that his ingestion of psychotropic drugs before he entered his guilty plea in state court rendered the plea involuntary. *Sheley v. Singletary*, 955 F.2d at 1437-39. "[A] '[petitioner] must present evidence demonstrating that the dosage [of anti-psychotic medication] given him affected him sufficiently adversely as to raise a doubt of his ability to consult with his lawyer and to have a rational understanding of the proceedings against him.'" *Sheley v. Singletary*, 955 F.2d at 1438-39 (*quoting Fallada v. Dugger*, 819 F.2d 1564, 1569 (11th Cir. 1987)). The court found that Sheley failed to present sufficient evidence to support his claim that his "medication caused him to be confused and to lack understanding of the proceedings under the legal standard of competence." *Sheley v. Singletary*, 955 F.2d at 1439.

violates the Due Process Clause by failing to conduct such an inquiry if the objective facts known to the court at the time create a *bona fide* doubt as to mental competency. *Drope v. Missouri*, 420 U.S. at 180; *Pate v. Robinson*, 383 U.S. at 385; *Medina v. Singletary*, 59 F.3d 1095 (11th Cir. 1995).

During the plea colloquy, Petitioner admitted that he was under the influence of medication and that he was receiving treatment a mental illness. Petitioner averred that he suffered from manic depression and an antisocial personality. Notwithstanding, Petitioner assured the state court that he understood the decision he was making in entering his plea, that he understood the maximum sentence the charged offense carried and that he understood the sentence the court intended to impose. Petitioner further averred that no one had threatened or coerced him into entering his plea. Petitioner fails to identify what medication or dosage he was allegedly taking at the time of his plea.

Petitioner's bare allegation that he was under the influence of psychotropic medication when he entered his *nolo contendere* plea is insufficient to sustain his claim of an involuntary plea. The trial court observed Petitioner's demeanor, coherence and ability to communicate with the court during the plea colloquy. Nothing in the transcript of the plea hearing indicates that Petitioner lacked a sufficient understanding of the proceedings. Petitioner fails to cite any objective facts that would positively, unequivocally and clearly generate a legitimate doubt as to his competency during the plea hearing.[21] *Sheley v. Singletary*, 955 F.2d at 1438. Petitioner fails to show that any medication or mental illness affected him at the plea hearing to the point that he could not understand the proceedings or effectively consult with counsel. *Dusky v. United States*, 362 U.S. at 402. Petitioner fails to rebut the presumption of correctness afforded the state court's factual

---

[21] Petitioner contends "that during the colloquy he was drooling, had difficulty standing, was unsteady on his feet, and was slurring his speech" (Dkt. #1, Attach. 2, p. 25). Nothing in the record substantiates this allegation and Petitioner provides no objective proof to support his contention.

findings.   Consequently, Petitioner fails to meet his burden of proving that the state court unreasonably applied controlling Supreme Court precedent or unreasonably determined the facts. *See* 28 U.S.C. § 2254(d)(1), (2).   Ground Four warrants no federal habeas corpus relief.

**Ground Five**

Petitioner claims ineffective assistance of counsel, a difficult claim to sustain. "[T]he cases in which habeas petitioners can properly prevail on the ground of ineffective assistance of counsel are few and far between." *Waters v. Thomas*, 46 F.3d 1506, 1511 (11th Cir. 1995) (*en banc*) (*quoting Rogers v. Zant*, 13 F.3d 384, 386 (11th Cir. 1994)). *Strickland v. Washington*, 466 U.S. 668 (1984), governs an ineffective assistance of counsel claim:

> The law regarding ineffective assistance of counsel claims is well settled and well documented. In *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), the Supreme Court set forth a two-part test for analyzing ineffective assistance of counsel claims. According to *Strickland*, first, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. *Strickland*, 466 U.S. at 687, 104 S.Ct. 2052.

*Sims v. Singletary*, 155 F.3d 1297, 1305 (11th Cir. 1998).

*Strickland* requires proof of both deficient performance and consequent prejudice. *Strickland v. Washington*, 466 U.S. at 697 ("There is no reason for a court deciding an ineffective assistance claim . . . to address both components of the inquiry if the defendant makes an insufficient showing on one."); *Sims v. Singletary*, 155 F.3d at 1305 ("When applying *Strickland*, we are free to dispose of ineffectiveness claims on either of its two grounds."). *See also Hill v. Lockhart*, 474 U.S. 59 (1985). "[C]ounsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Strickland v.*

*Washington*, 466 U.S. at 690.  "[A] court deciding an actual ineffectiveness claim must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." *Strickland v. Washington*, 466 U.S. at 690. *Strickland* requires that "in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance." *Strickland v. Washington*, 466 U.S. at 690.

Because "[a]n error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment," Petitioner must demonstrate that counsel's error prejudiced the defense. *Strickland v. Washington*, 466 U.S. at 691-92.  To meet this burden, Petitioner must show a reasonable probability that, but for counsel's unprofessional errors, he would not have pleaded *nolo contendere* and would have insisted on proceeding to trial. *See Hill v. Lockhart*, 474 U.S. at 59.  A reasonable probability is a probability sufficient to undermine confidence in the outcome. *Strickland v. Washington*, 466 U.S. at 694.

*Strickland* cautions that "strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable; and strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation." *Strickland v. Washington*, 466 U.S. at 690-91.  Petitioner cannot meet his burden merely by showing that the avenue chosen by counsel proved unsuccessful:

> The test has nothing to do with what the best lawyers would have done. Nor is the test even what most good lawyers would have done. We ask only whether some reasonable lawyer at the trial could have acted, in the circumstances, as defense counsel acted at trial. . . . We are not interested in grading lawyers' performances; we are interested in whether the adversarial process at trial, in fact, worked adequately.

*White v. Singletary*, 972 F.2d 1218, 1220-21 (11th Cir. 1992).  *Accord Chandler v. United States*, 218 F.3d 1305, 1313 (11th Cir. 2000) ("To state the obvious:  the trial lawyers, in every case, could

have done something more or something different. So, omissions are inevitable. . . . [T]he issue is not what is possible or 'what is prudent or appropriate, but only what is constitutionally compelled.'") (*en banc*) (*quoting Burger v. Kemp*, 483 U.S. 776, 794 (1987)). *See also Jones v. Barnes*, 463 U.S. 745, 751 (1983) (counsel has no duty to raise frivolous claims).

Petitioner alleges that his trial counsel rendered ineffective assistance by failing "to make an independent examination of the facts, circumstances, pleadings and laws involved and then to offer her informed opinion as to what plea should be entered by [Petitioner]" (Dkt. #1, Attach. 2, p. 28). Petitioner alleges that counsel should have moved for dismissal of the "fatally defective" Information and moved for a statement of particulars. Petitioner further alleges that counsel rendered ineffective assistance by failing to move to dismiss the Information because of its lack of a factual basis and failed to inform Petitioner that the evidence against him was "weak." The state court rejected this claim in Petitioner's state Rule 3.850 motion as follows:

> To sustain an ineffective assistance claim, a defendant must show deficient performance and personal prejudice as originally articulated in Strickland v. Washington, 466 U.S. 668, 687, 694, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). Both the performance and prejudice components must be satisfied. In the event a defendant fails to satisfy one component, the inquiry ends, and the reviewing court need not determine if the defendant satisfied the other. See Maxwell v. Wainwright, 490 So.2d 927 (Fla. 1986).

> . . .

> The Defendant's final claim is that trial counsel rendered ineffective assistance by failing to ensure that his constitutional rights were protected with regards to the issues previously addressed in claims one through four. The court indicated that no error occurred with regard to those claims and therefore finds that no prejudice exists under Strickland. Accordingly, this claim is also denied.

(Dkt. #8, Ex. 4, pp. 36, 40).  To obtain relief on this claim, Petitioner must establish that the state court unreasonably applied *Strickland* or unreasonably determined the facts in denying his Rule 3.850 motion.

Petitioner alleges ineffective assistance of counsel based on the same allegations used to support his claims of trial court error in Grounds One and Three.  As discussed in Grounds One and Three, *supra*, the Information was neither fatally defective nor did it lack a sufficient factual basis. Accordingly, Petitioner cannot demonstrate prejudice resulting from counsel's alleged failure to challenge the Information on these grounds.  Absent a demonstration of prejudice, Petitioner cannot prevail on this claim of ineffective assistance of counsel.  *See  Strickland v. Washington*, 466 U.S. at 697; *Hill v. Lockhart*, 474 U.S. at 59.  Petitioner fails to meet his burden of proving that the state court unreasonably applied controlling Supreme Court precedent or unreasonably determined the facts.  *See* 28 U.S.C. § 2254(d)(1), (2).  Ground Five warrants no federal habeas corpus relief.[22]

It is therefore ORDERED AND ADJUDGED that:

1.      Petitioner's petition for the writ of habeas corpus (Dkt. #1) is DENIED.

2.      The Clerk is to enter judgment for Respondent and close this case.

**DONE** and **ORDERED** in Tampa, Florida on *April  23rd*           , 2008.


_____
**JAMES D. WHITTEMORE**
**UNITED STATES DISTRICT JUDGE**

---

[22] To the extent Ground Five asserts a claim of cumulative error rendering his trial fundamentally unfair, the claim warrants no relief.  *See Conklin v. Schofield,* 366 F.3d 1191, 1210 (11th Cir. 2004) ("[T]he court must consider the cumulative effect of [the alleged errors] and determine whether, viewing the trial as a whole, [Petitioner] received a fair trial as is [his] due under our Constitution.") (*quoting United States v. Blasco*, 702 F.2d 1315, 1329 (11th Cir. 1983)).  Because Petitioner's individual claims warrant no relief, he cannot demonstrate cumulative error sufficient to entitle him to federal habeas relief.